JOHN HICKS ET AL. V. DANIEL MCLACHLAN AND EMMA
MCLACHLAN.

*Fraudulent conveyances—Husband and wife—Homestead.*

1. Where in a suit brought to set aside a deed from a husband to
his wife, charged to have been given in fraud of creditors, the
complainant relies upon the testimony of the husband and wife
to make out his case, he cannot discriminate between favorable
and unfavorable testimony, where it is all equally probable,
merely on suspicion that the unfavorable testimony is false;
citing *Darling v. Hurst*, 39 Mich. 765.

2. A husband conveyed 80 acres of land, including his homestead,
to his wife, in payment of a *bona fide* indebtedness amounting,
with the homestead exemption, to the value of the entire land,
which conveyance is sustained as within the decision in *Brig-
ham v. Fawcett*, 42 Mich. 542.

Appeal from Isabella.   (Hart, J.)   Submitted on briefs:
October 14, 1892.   Decided December 23, 1892.

Bill in aid of execution.   Defendant Emma McLachlan
appeals.   Decree reversed, and bill dismissed.   The facts
are stated in the opinion.

*Dodds & Dodds,* for complainants, contended:

1. The defense set up in the answer must be supported by the
proofs, for a defense made by the testimony can avail nothing
unless it is set up in the answer; citing *Manning v. Drake,*
1 Mich. 34; *Jerome v. Hopkins,* 2 Id. 100; *Cicotte v. Gagnier,*
Id. 386; *Warner v. Whittaker,* 6 Id. 134; *Bloomer v. Hender-
son,* 8 Id. 400; *Bomier v. Caldwell,* Id. 476; *Barrows v. Baugh-
man,* 9 Id. 220; *Wurcherer v. Hewitt,* 10 Id. 453; *Peckham v.
Buffam,* 11 Id. 531; *Moran v. Palmer,* 13 Id. 372; *Converse v.
Blumrich,* 14 Id. 109; *Hubbard v. Winsor,* 15 Id. 147; *Fosdick
v. Van Husan,* 21 Id. 567; *Harwood v. Underwood,* 28 Id. 430;
*Ford v. Loomis,* 33 Id. 121; *Connerton v. Millar,* 41 Id. 608;

*Livingston v. Hayes,* 43 Id. 129; *Hoffman v. McMorran,* 52 Id. 319.

2. When a sale from husband to wife is contested by creditors, it can be sustained only when it appears (*a*) that an honest debt existed from the husband to the wife, and (*b*) that the transfer was made to pay that debt; citing *Jordan v. White,* 38 Mich. 253; and the fact that the wife does not know of the fraudulent intent of the husband makes no difference; citing *Fellows v. Smith,* 40 Mich. 691; *Matson v. Melchor,* 42 Id. 480.

3. Sales by a husband to his wife must be viewed by the court with suspicion, and closely scrutinized; citing *Leppig v. Bretzel,* 48 Mich. 322; and all of the facts must be taken into consideration; citing *Judge v. Vogel,* 38 Mich. 571; and it is always a suspicious circumstance that no written evidence of the debt exists; citing *Allen v. Antisdale,* 38 Mich. 231; *Keam v. Conkwright,* 78 Id. 65.

4. The legal presumption always is that the wife is employing her services for her husband, and where they are rendered to a third person, and the husband receives the money, the agreement to pay it back to the wife must be distinct; citing *Mason v. Dunbar,* 43 Mich. 409; and voluntary or gratuitous services can never be recovered for; citing *O'Connor v. Beckwith,* 41 Mich. 660; *Allen v. Allen,* 60 Id. 635.

5. The answer merely states that the defendants had occupied the north 40 acres as a homestead (which is shown by the testimony to have been worth from $2,000 to $2,400); but defendants do not ask to have it protected as such, nor show that it is within the limits of the homestead, and in such a case they cannot avail themselves of it as a defense in any way; citing *Matson v. Melchor,* 42 Mich. 481; *Stevenson v. Jackson,* 40 Id. 704; *Fetters v. Duvernois,* 73 Id. 483.

*Graves & Wickham* and *Charles T. Russell* for appellant, contended:

1. The bill called for an answer under oath, which claim was complied with, and the answer, being responsive to the bill, is evidence; citing *Schwarz v. Wendell,* Walk. Ch. 294; *Roberts v. Miles,* 12 Mich. 297.

2. Complainants made defendants their witnesses to prove their case, and must accept their statements; citing *Darling v. Hurst,* 39 Mich. 765; *Brigham v. Fawcett,* 42 Id. 542.

3. The defendants had a homestead right in the land, which was

not exposed to creditors, amounting, with the indebtedness of about $1,960, to about $3,460, nearly if not the full value of the land; and if the value of the land, over and above the exemption, did not exceed the indebtedness, the complainants have no reason to complain; citing *Brigham v. Fawcett*, 42 Mich. 542; *Pulte v. Geller*, 47 Id. 560; *Shay v. Wheeler*, 69 Id. 254.

4. The fact that the grantee pays less for property than it is worth is not evidence of a fraudulent transfer, unless the price is so small as to make it substantially a voluntary conveyance; citing *Fraser v. Passage*, 63 Mich. 551; and it is only where the consideration is grossly inadequate that it is considered a badge of fraud; citing *Shay v. Wheeler*, 69 Mich. 254; and in such a case, to render the conveyance void for fraud upon creditors, it is necessary that the grantee should have a knowledge of, and in some way participate in, the fraud; citing *Fraser v. Passage*, 63 Mich. 551.

5. Mrs. McLachlan had a right to bargain with her husband for any amount that was due her from him, and to take the deed from him in settlement of her claim, and it is not fraudulent with respect to other creditors; citing *Wooden v. Wooden*, 72 Mich. 352; and when property goes to pay an honest debt, it is lawful, even if it is intended to, and does, cut off other creditors; citing *Nichols v. Bancroft*, 74 Mich. 191.

6. Daniel McLachlan had a right to waive the statute of limitations in favor of his wife's claim; citing *Brigham v. Fawcett*, 42 Mich. 542; *Fraser v. Passage*, 63 Id. 551.

7. The absence of a written memorandum of the indebtedness is not a suspicious circumstance, as the court will recognize the confidential relations between husband and wife, and give them due weight; citing *Buhl v. Peck*, 70 Mich. 44; nor is it a suspicious circumstance that Mrs. McLachlan did not put her deed on record immediately; citing *Hill v. Bowman*, 35 Mich. 193; *Wooden v. Wooden*, 72 Id. 353.

McGRATH, C. J. This is a bill in aid of execution.

In November, 1886, Daniel McLachlan became indorser upon a note for $400. The note was renewed from time to time until May 21, 1888, at which time Daniel McLachlan gave his own note for the amount, which was renewed from time to time, and, not having been paid, suit was commenced thereon May 1, 1889, by attachment, which was levied upon the W. ½ of the N. W. ¼ of section 9, township 14 N., of range 4 W.

On January 19, 1887, Daniel McLachlan conveyed the property to his wife, Emma McLachlan. The deed was recorded November 2, 1887. The bill sets up that the purpose of this conveyance was to defraud creditors, and asks for an answer upon oath. The answer denies the fraud, alleges that the north 40 acres of land has been occupied and used as a homestead by defendants for 10 years and upwards, and now is exempt from sale on execution as such; that Daniel McLachlan was at the time of said conveyance indebted to his wife, Emma McLachlan, setting forth such indebtedness specifically, and that said conveyance was made to her in satisfaction of such indebtedness.

The items of the alleged indebtedness were as follows: The proceeds of 40 acres of land which Emma McLachlan owned and sold in 1878, being $400; the proceeds of her labor in 1873, as cook for one Andre, in a lumber camp, $250; the proceeds of the sale of two cows in 1871, which she received from her relations, $83; a loan in 1881, of $40; her earnings as cook in a lumber camp operated by her husband and others as partners in 1882, 1883, and 1884, amounting to $450,—which items, together with the interest, aggregated $1,960.86.

The court below held that defendants have homestead rights in the north 40; that there was no valid consideration for the deed sought to be set aside, except $400, received for the 40 acres which the wife had owned; that the north 40 acres was worth much more than the $1,500 allowed by law; and that the bill be dismissed as to the north 40, and the deed set aside as to the south 40. Emma McLachlan appeals.

All of the questions raised are disposed of in defendants' favor by *Brigham v. Fawcett*, 42 Mich. 542, and *Darling v. Hurst*, 39 Id. 765. Here, as there, complainants relied upon the testimony of the defendants. The wife testifies

that there was an express agreement in each instance that these moneys should be refunded to her, with interest; that she worked for Andre under a distinct agreement that her wages were to be paid to her, and that they were so paid to her; that she went to work in the lumber camp operated by her husband and partners under an agreement that she should have her wages, and her husband agreed to pay her; that her husband had frequently promised to deed this land to her in payment for these loans and this indebtedness. While there is some conflict between the testimony of husband and wife as to any agreement at the time, and in each instance, to refund these loans, and pay the indebtedness of $450, yet he testifies that he intended to pay her, and that she referred to the indebtedness at different times, and he said that he would pay her. There is no doubt from the testimony that these sums of money charged to her husband were actually earned by her, received by her, turned over and contributed by her to her husband, and used by him in the purchase and improvement of this very property, and that an agreement to repay, and to pay for her services, is fairly deducible, even from the testimony of the husband. From the testimony of both it is clear that the wife would be entitled to judgment. It is unquestionably true that, in the absence of an express agreement, the presumption is that the wife is employing her services for the husband; but here the express agreement to refund and to pay is present. In *Darling v. Hurst, supra,* both husband and wife were employed upon a salary at the same place.

According to the testimony, the 80 acres of land—one 40 of which was and is occupied as a homestead—was worth at the time of the conveyance from $3,000 to $3,500. That question is expressly ruled by *Brigham v. Fawcett, supra.* The indebtedness set up is $1,961, and the homestead exemption $1,500, making a total of $3,461.

The decree below must be reversed, and the bill dismissed, with costs of both courts to appellant.

The other Justices concurred.