## FRIEDMAN v. STERLING REFRIGERATOR CO.
### No. 4431.

Circuit Court of Appeals, Fourth Circuit.
June 12, 1939.

Irving B. Grandberg, of Baltimore, Md., for appellant.

Samuel J. Aaron and Jesse Jay Rubin, both of Baltimore, Md. (Howard L. Aaron, of Baltimore, Md., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and WAY, District Judge.

PARKER, Circuit Judge.

This is an appeal by the Trustee in Bankruptcy in a controversy arising in the bankruptcy proceeding of Darwin E. Wilhelm. The Sterling Refrigerator Company claims a refrigerator show case sold by it to the bankrupt under a conditional sale contract. The trustee in bankruptcy opposes its claim on the ground that a portion of the claim of one of the creditors arose after the delivery of the show case to bankrupt and prior to the recording of the conditional sale contract as required by the statute of Maryland. The referee in bankruptcy decided the issue so raised in favor of the trustee; but the District Judge reversed the referee, and the trustee has appealed to this court. The determinative facts were well stated by the District Judge as follows:

"The facts affecting the claim of the Sterling Refrigerator Company are these. The bankrupt was engaged in the retail confectionery business, and for that purpose contracted to buy a 'refrigerator case' under conventional form of conditional sale contract. The case was delivered to the bankrupt on February 11, 1938, and promptly put into temporary use although certain incidental attachments were not delivered and installed until February 26, 1938. The total purchase price was $786.25, of which $534.25 remained due at the time of filing the petition in bankrupt-

cy on September 27, 1938. The contract was recorded February 17, 1938. The only possible subsequently intervening creditor is Frey & Son, a wholesale grocer, who, as an unsecured creditor, filed a claim in the bankruptcy estate in the total amount of $164.73 for balance due on deliveries of merchandise between December 16, 1937, and February 22, 1938, of which, however, there was only one delivery (February 12, 1938, in the amount of $14.23) between February 11th and February 17th. The additional testimony at the hearing showed that in December of 1937 the bankrupt established a line of credit and began a running account with Frey & Son. Pursuant thereto from time to time orders for merchandise were given and currently filled by Frey & Son. The order for the delivery made on February 12, 1938, was given a day or two prior to February 11th, which was the date on which the refrigerator case was delivered to the bankrupt."

The provisions of the Bankruptcy Act here applicable are sections 67a and 70e of the Bankruptcy Act of 1898, as amended, 11 U.S.C.A. §§ 107(a) and 110 (e). The first of these provides that claims which for want of record would not have been valid liens as against claims of creditors of the bankrupt shall not be liens against his estate. The second provides that the trustee may avoid any transfer by the bankrupt of his property which any creditor might have avoided. Under these sections, it is held that a claim which for want of record is void as against some but not all of the creditors of the bankrupt may be avoided in toto by the trustee in bankruptcy, even though creditors generally benefit by the avoidance. Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133, 76 A.L.R. 1198; In re Sachs, 4 Cir., 30 F. 2d 510; In re Moore, 4 Cir., 11 F.2d 62.

The statute of Maryland applicable is section 55 of Art. 21 of the 1935 Supplement to the Annotated Code of Maryland. It provides that a conditional sale contract with respect to the reservation of title shall be void "as to third parties without notice" until recorded.[1] The term "third parties without notice" includes subsequent creditors, whether lien creditors or not. Enterprise Fuel Co. v. Jones, 4 Cir., 99 F.2d 928; Roberts & Co. v. Robinson, 141 Md. 37, 118 A. 198; In re Sachs, supra. Since one of the creditors here furnished goods to bankrupt subsequent to the execution of the conditional sale contract and prior to its recording, we think it clear that the reservation of title therein contained was void as against such creditor, under the Maryland statute, and consequently void as against the trustee in bankruptcy under the provisions of the Bankruptcy Act to which we have referred.

The learned judge below held to the contrary, on the theory that the crucial date in determining the status of the creditor was that on which the credit was agreed upon rather than that upon which the goods were delivered; but we find no authority for such distinction and we do not think it sound. The creditor's claim for goods sold and delivered, which is the claim upon which he relies, does not arise until the delivery of the goods; and, in making the delivery upon which such claim arises and parting with title to the goods delivered, he is a "third person without notice", whom it was the purpose of the statute to protect. The fact that delivery may have been made in accordance with a pre-existing contract is immaterial; for,

---

[1] "55. Every note, sale or contract for the sale of goods and chattels, wherein the title thereto, or a lien thereon, is reserved until the same be paid in whole or in part, or the transfer of title is made to depend upon any condition therein expressed and possession is to be delivered to the vendee, shall, in respect to such reservation and condition, be void as to third parties without notice until such note, sale or contract be in writing, signed by the vendee, and be recorded in the Clerk's office of the Superior Court of Baltimore City, or in the Clerk's office of the Circuit Courts of the various counties, as the case may be, where the vendee resides, or in the case of a corporate or partnership vendee, then where such vendee has its principal place of business in the State of Maryland; and such recording shall be sufficient to give actual or constructive notice to third parties when a memorandum of the paper writing signed by the vendee or vendees, setting forth the date thereof, the amount due thereon, when and how payable and a brief description of the goods and chattels therein mentioned shall have been recorded with the Clerk aforesaid, but it shall not be necessary that said paper writing shall be acknowledged or an affidavit made to the consideration therein expressed as in the case of bills of sale."

notwithstanding such contract the seller could protect himself, if doubtful of the solvency of the purchaser, by refusing delivery or asserting a seller's lien. See Williston on Sales, pp. 879–883. Only upon delivery does he lose power to protect himself with respect to the goods sold, and it is clear that his status as a creditor, entitled to protection under the statute, must be judged as of that date. It does not appear in this case, however, that delivery was made under a pre-existing contract. It is true that an order for the goods was telephoned to the creditor two or three days before their delivery; but there is nothing to show that it resulted in a binding contract of sale until acceptance was evidenced by delivery. The fact that a line of credit had been established prior thereto is immaterial, as the creditor could have ceased furnishing goods under the line of credit at any time. It was likewise immaterial that there was a running account between the parties; for each order for goods became a separate and independent contract when accepted, and, with respect to the conveyance, the seller became a subsequent creditor as to items delivered after its execution. Cole v. Brown, 114 Mich. 396, 72 N.W. 247, 68 Am.St.Rep. 491; Henderson v. Henderson, 133 Pa. 399, 19 A. 424, 19 Am.St.Rep. 650; Hambleton v. Granite Co., 95 Vt. 295, 115 A. 102.

While there is language in several opinions to the effect that the purpose of the statute is to protect creditors who may have trusted the debtor on the faith of his apparent ownership of property, this relates merely to the purpose of the legislation and is not to be construed as a holding that reliance upon such ownership must be established as a condition to relief under the statute. As was well said in vol. 2A Uniform Laws Annotated, page 84, "True, one extending credit when the buyer had possession of the goods may not have known of such possession or placed any reliance on the buyer's appearance of ownership, but to draw the line between creditors who actually relied on the goods, and those who relied on the buyer's general appearance of prosperity, and those who would have extended credit even if there had been no conditional sale, is to attempt too fine distinctions." The terms employed in the recording statute of Maryland, as pointed out in Roberts & Co. v. Robinson, supra, 141 Md. 37, 43, 118 A. 198, 200, were "designed to safeguard the interests of all persons, acting without notice of the unrecorded contract, who would be injuriously affected if it were permitted to be enforced". See, also, Stieff, Inc. v. Wilson, 151 Md. 597, 600, 135 A. 407. A creditor delivering goods without notice of the unrecorded contract would be injuriously affected if it were permitted to be enforced, whether he had extended credit on the faith of apparent ownership or not.

Reference is made to cases of hardship which might occur as a result of the enforcement of the statute. The answer, of course, is that the vendor should protect himself by prompt recording. If he delays, he takes chances; and he is not relieved because the loss resulting therefrom may be greater than he may have anticipated or because it may have arisen through the creation of obligations by the debtor rather than through his dealing with the property which is the subject of the contract.

It was argued that the decree appealed from should be affirmed on the theory that the item of $14.23 due Frey & Son was liquidated by subsequent payments, but a careful examination of the account convinces us that this contention is without merit. When the payments on C.O.D. items are properly applied thereto and other payments are applied, as they must be, to older items of the account, the $14.23 item was clearly unpaid at the time of the filing of the petition in bankruptcy. Maryland Casualty Co. v. City of South Norfolk, 4 Cir., 54 F.2d 1032, 1038.

For the reasons stated, the decree appealed from will be reversed.

Reversed.